**UNITED STATES of America,
Plaintiff–Appellee,**

**v.**

**Charles Christopher MILTON,
Defendant–Appellant.**

**No. 94–5524.**

United States Court of Appeals,
Fourth Circuit.

Argued March 10, 1995.

Decided April 19, 1995.

**ARGUED:** Brian Joseph Murphy, Baltimore, MD, for appellant. Andrew Clayton White, Asst. U.S. Atty., Baltimore, MD, for appellee. **ON BRIEF:** Lynne A. Battaglia, U.S. Atty., Baltimore, MD, for appellee.

Before WIDENER, WILKINS, and HAMILTON, Circuit Judges.

Affirmed by published opinion. Judge HAMILTON wrote the opinion, in which Judge WIDENER and Judge WILKINS, joined.

## OPINION

HAMILTON, Circuit Judge:

Appellant, Charles Christopher Milton, appeals his conviction for possession of a firearm by a convicted felon, *see* 18 U.S.C. § 922(g)(1).[1] We affirm.

### I

On March 23, 1993, Officer Samuel Sweet of the Anne Arundel County Police Department was on vehicular patrol in the area of Route 648 and Interstate 695 in Glen Burnie, Maryland, when he observed a 1985 blue Renault Alliance travelling on Interstate 695, weaving in and out of its lane.[2] Officer Sweet stopped the vehicle, approached the driver (later identified as Jothan Schnella), and asked him for his driver's license and registration. The driver responded that he had neither his driver's license nor the registration. Officer Sweet then asked the driver for identification and the driver responded that he had none. At that point, Officer Sweet asked the driver to exit and walk to the rear of the vehicle; the driver complied. Once at the rear of the vehicle, the driver told Officer Sweet that his name was Jothan Schnella. Officer Sweet then went over to the passenger side of the car and asked the only passenger (later identified as Milton) in the vehicle what the driver's name was. The passenger replied that the driver's name was "Charles Milton."

Officer Sweet returned to the rear of the vehicle and informed the driver of the discrepancy in identification. The driver insisted his name was Jothan Schnella and told Officer Sweet that he did not have a Maryland driver's license and that his New Jersey driver's license had been suspended. Officer Sweet then placed Schnella under arrest for driving with a suspended license. After Milton was removed from the vehicle, Officer Sweet conducted a search of the vehicle, during which he recovered a Smith & Wesson 9 mm. semi-automatic handgun from the glove compartment.

Milton was arrested and charged, *inter alia*, with illegal possession of a handgun in violation of Maryland law.[3] After Officer Sweet advised Milton of his *Miranda*[4] rights, Milton admitted he owned the firearm.

On January 25, 1994, a federal Grand Jury sitting in the District of Maryland returned a one-count indictment charging Milton with possession of a firearm by a convicted felon, *see* 18 U.S.C. § 922(g)(1). The case went to

1. Section 922(g)(1) makes it "unlawful for any person … who has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year … to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce." The term "crime punishable by imprisonment for a term exceed-

ing one year" is commonly referred to as a "felony."

2. It was later determined that the vehicle belonged to Milton.

3. Although initially charged under Maryland state law, Milton was never tried on the state charges.

4. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

trial[5] and the jury returned a verdict of guilty. The district court sentenced Milton to 120 months' imprisonment, and Milton noted a timely appeal.

## II

Prior to trial, Milton moved to suppress the firearm, contending that the warrantless search of the vehicle violated his Fourth Amendment rights. The district court held that the warrantless search was justified as a search incident to a lawful arrest and a protective search under the principles set forth in *Michigan v. Long*, 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983).

■■■ All warrantless searches "are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967) (footnote omitted). One such exception is a search incident to a lawful arrest. *United States v. Robinson*, 414 U.S. 218, 224, 94 S.Ct. 467, 471–72, 38 L.Ed.2d 427 (1973). In *New York v. Belton*, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981), the Supreme Court held that "when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile." *Id.* at 460, 101 S.Ct. at 2864 (footnote omitted). Under *Belton*, "the police may also examine the contents of any containers found within the passenger compartment." *Id.; see also United States v. McCraw*, 920 F.2d 224, 228 (4th Cir.1990) ("Incident to an automobile occupant's lawful arrest, police may search the passenger compartment of the vehicle and examine the contents of any containers found within the passenger compartment."). "Containers," as defined in *Belton*, includes the glove compartment. *Belton*, 453 U.S. at 460 n. 4, 101 S.Ct. at 2864 n. 4. *Belton* applies "even if the arrestee has been separated

from [the vehicle] prior to the search of the passenger compartment." *United States v. Mans*, 999 F.2d 966, 968–69 (6th Cir.), *cert. denied*, —— U.S. ——, 114 S.Ct. 567, 126 L.Ed.2d 467 (1993).

■■ In this case, the vehicle was searched after Schnella had been removed from the vehicle and arrested for driving with a suspended license. Once Schnella was placed under arrest, Officer Sweet was free to conduct a search of the interior compartment of the vehicle, including the glove compartment. *See Belton*, 453 U.S. at 460–61, 101 S.Ct. at 2864–65; *McCraw*, 920 F.2d at 228. Accordingly, Milton's motion to suppress was properly denied by the district court.[6]

## III

Prior to trial, Milton, having stipulated to the existence of a qualifying prior felony conviction, moved *in limine* to exclude from the jury's consideration evidence concerning the existence of that conviction. Milton's motion *in limine* sought to have the jury consider only the question of possession, and not hear any evidence on or consider the fact that Milton had previously been convicted of a felony. Milton's motion *in limine* went far beyond a mere bifurcation in the presentation of evidence. By seeking to exclude evidence of his felony status at the trial, Milton sought to relieve the government of its burden of proving to the jury, beyond a reasonable doubt, that at the time he possessed the firearm, he had a qualifying previous felony conviction. The district court denied the motion. On appeal, Milton contends this ruling constitutes reversible error. We disagree.

Numerous courts have held that if a defendant is charged with being a felon-in-possession of a firearm, a district court does not have the power to instruct the jury to consider only the possession element of the offense. *See, e.g., United States v. Barker*, 1 F.3d 957 (9th Cir.1993), *amended*, 20 F.3d 365, 366 (9th Cir.1994); *United States v. Gilliam*, 994

---

5. At trial, the government presented evidence, by way of stipulation, that: (1) the Smith & Wesson 9 mm. semi-automatic handgun was a firearm under federal law; (2) the firearm travelled in interstate commerce; and (3) Milton had a qualifying prior felony conviction.

6. In light of our holding on the search incident to a lawful arrest issue, we need not address the district court's alternative holding that the search was justified as a protective search under *Long*.

F.2d 97, 101–02 (2d Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 335, 126 L.Ed.2d 280 (1993); *United States v. Birdsong,* 982 F.2d 481, 482 (11th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 2984, 125 L.Ed.2d 680 (1993); *United States v. Collamore,* 868 F.2d 24, 27–29 (1st Cir.1989); *United States v. Brinklow,* 560 F.2d 1003, 1006 (10th Cir.1977), *cert. denied,* 434 U.S. 1047, 98 S.Ct. 893, 54 L.Ed.2d 798 (1978). These decisions are predicated on the notion that removing the prior felony element from the jury's consideration would be confusing to a jury inasmuch as simple possession of a firearm, without more, is not a crime. *See, e.g., Barker,* 20 F.3d at 366; *Gilliam,* 994 F.2d at 100–01; *Collamore,* 868 F.2d at 28. As the court in *Collamore* explained:

> [W]hen a jury is neither read the statute setting forth the crime nor told of all the elements of the crime, it may, justifiably, question whether what the accused did was a crime.... Possession of a firearm by most people is *not* a crime. A juror who owns or who has friends and relatives who own firearms may wonder why Collamore's possession was illegal. Doubt as to the criminality of Collamore's conduct may influence the jury when it considers the possession element.

*Id.*

■ Additionally, permitting the removal of the prior felony element from the jury's consideration would have the impermissible effect of allowing the district court to modify a criminal statute enacted by Congress by eliminating through stipulation one of the elements of the crime. *Gilliam,* 994 F.2d at 102. As the Second Circuit stated in *Gilliam:* "Whatever the basis of the reasoning, be it Congressional mandate or the duty of the jury to make a totally informed judgment, there is virtual judicial unanimity in the belief that the jury must be informed of all the elements of the crime charged." *Id.* Indeed, Milton's argument is contrary to our well-established precedent that a district court must instruct a jury on each and every

essential element of an offense. *See, e.g., United States v. McLamb,* 985 F.2d 1284, 1293 (4th Cir.1993) (failure to instruct the jury on any essential element of an offense constitutes plain error). Furthermore, "[l]imiting the jury's consideration of required elements of an indicted offense is contrary to the presumption against special verdicts in criminal cases." *Barker,* 20 F.3d at 366. In short, removal of the prior felony element from the jury's consideration "prevents the government from having its case decided by the jury, and changes the very nature of the charged crime." *Id.* We, therefore, hold that, in a felon-in possession case such as this, the district court must instruct the jury that the government must prove beyond a reasonable doubt that at the time the defendant possessed the firearm he had a qualifying previous felony conviction, that is a prior conviction for an offense punishable by a term of imprisonment exceeding one year. Accordingly, Milton's argument that the district court committed reversible error in denying his motion *in limine* must be rejected.[7]

### IV

■ Finally, Milton contends that the district court abused its discretion in denying his request for a missing witness instruction. We have reviewed this assignment of error and find it to be without merit inasmuch as the "missing witness," Jothan Schnella, was equally available to both sides. *See United States v. Brooks,* 928 F.2d 1403, 1412 (4th Cir.), *cert. denied,* 502 U.S. 845, 112 S.Ct. 140, 116 L.Ed.2d 106 (1991). Accordingly, for the reasons stated, Milton's conviction for possession of a firearm by a convicted felon, *see* 18 U.S.C. § 922(g)(1), is affirmed.

*AFFIRMED.*

---

7. Milton was wise to stipulate to the fact of the prior felony conviction because if a defendant offers to stipulate to the fact of the prior felony conviction, evidence of the nature of the conviction is irrelevant and will not be admitted. *See*

*United States v. Rhodes,* 32 F.3d 867, 871 (4th Cir.1994). This trial tactic minimizes the obvious prejudicial impact that a prior felony conviction has on a jury. *Id.* at 874–75 (Hamilton, J., concurring specially).