**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                              No. 95-5315

RANDALL DWAYNE MUSE,
Defendant-Appellant.

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
John R. Hargrove, Senior District Judge.
(CR-94-311-MJG)

Argued: March 8, 1996

Decided: May 13, 1996

Before MURNAGHAN and MOTZ, Circuit Judges, and
BUTZNER, Senior Circuit Judge.

_____

Affirmed by published opinion. Judge Motz wrote the opinion, in
which Judge Murnaghan and Senior Judge Butzner joined.

_____

**COUNSEL**

**ARGUED:** Robert Leon Pierson, Baltimore, Maryland, for Appel-
lant. Peter M. Semel, Assistant United States Attorney, Baltimore,
Maryland, for Appellee. **ON BRIEF:** Lynne A. Battaglia, United
States Attorney, Baltimore, Maryland, for Appellee.

_____

**OPINION**

DIANA GRIBBON MOTZ, Circuit Judge:

After a jury trial, appellant Randall Dwayne Muse was convicted of violating 18 U.S.C. § 922(g), which criminalizes a convicted felon's possession of a firearm. Muse appeals, asserting that the district court erred in (1) failing to redress adequately a government discovery violation; (2) removing from the jury's consideration a critical factor in evaluating witness credibility; and (3) improperly instructing the jurors with regard to the effect that factual stipulations should have on their deliberations. Finding no reversible error, we affirm.

I.

This case arose from a Baltimore City police investigation into allegations that Samuel Lee McKay was involved in passing forged checks. Pursuant to a warrant, on February 22, 1994, police searched McKay's residence. During this search, police discovered and seized a .22 caliber semi-automatic handgun that its owner had reported as stolen.

When questioned about the weapon, McKay responded that he had bought it from a man he knew only as "Top." McKay stated that he had met Top through Remus Burnett, an intermediary who purportedly assisted Top in locating buyers for weapons. After federal authorities became aware of McKay's statements, an investigation commenced with regard to the weapon transactions. A special agent with the Bureau of Alcohol, Tobacco, and Firearms questioned Burnett, who acknowledged that he had been involved in the weapon sale to McKay and that Top had been the weapon supplier. Burnett stated that he had known Top for twenty years, that he had recently seen numerous guns in Top's possession, and that Top's real name was Randall Dwayne Muse.

Because Muse had been previously convicted of a crime punishable by imprisonment for a term of more than one year, 18 U.S.C. § 922(g)(1) prohibited his possession of a firearm. Therefore, on August 2, 1994, Federal agents obtained a warrant and arrested Muse

at his home. At the time, Muse gave a statement in which he said that he had found a number of weapons in an abandoned duffel bag and that he had given them to Burnett to sell. Armed with this statement and the testimony of McKay and Burnett, the government charged Muse with possessing a firearm in violation of § 922(g)(1).

Muse's trial was scheduled for February, 1995. Although the government did not specifically promise McKay or Burnett lenient treatment with respect to potential criminal charges against them, both agreed to testify against Muse. Prior to their testimony, in late December, 1994, or early January, 1995, Burnett received an envelope containing a card that stated, "Never rat on friends, boy. Stay healthy." Fingerprints taken from the envelope were identified as belonging to Muse. After a four-day trial in February, a jury found Muse guilty of the charge against him.

II.

Muse's first contention in this appeal involves the government's conceded violation of Rule 16(a)(1)(C) of the Federal Rules of Criminal Procedure. Twice prior to trial, defense counsel inquired of the government whether any witnesses scheduled to testify had identified Muse in photographic arrays. The prosecutor responded that no such arrays had taken place. During the prosecutor's direct examination of McKay and Burnett, both made in-court identifications of Muse as the man they knew as "Top." Neither made any reference to a photographic array.

On cross-examination, however, when defense counsel asked McKay whether agents had presented him with a photographic array, McKay replied that agents had shown him an array and that he had identified a picture of Muse as the man whom he knew as "Top." During the ensuing bench conference, defense counsel complained that the government had violated Rule 16(a)(1)(C) by falsely stating that McKay had not identified Muse from a photographic array. The prosecutor responded that he had no idea why McKay claimed to have identified Muse's picture because, to his knowledge, no one had shown McKay any photographs. After further investigation, however, the prosecutor found that an agent had indeed shown McKay a photographic array. The agent had neglected to inform the prosecutor

3

because, the agent said, he had shown McKay the array in connection with a separate investigation and had failed to perceive its importance to Muse's trial.

The next day, Muse moved for a mistrial or, in the alternative, to suppress McKay's in-court identification. Muse also asked the district court for a hearing outside the jury's presence to investigate the circumstances of the photographic identification. The district court denied the motion for a mistrial and refused to conduct a hearing outside the jury's presence. Instead, the court offered to permit Muse to recall McKay to the stand to inquire into the circumstances of the out-of-court identification. Citing the potential prejudice involved in questioning McKay in front of the jury, Muse's counsel declined the court's offer. Defense counsel did question the federal agents as to why they had failed to inform the prosecutor about the out-of-court identification. Additionally, defense counsel was permitted, during closing argument, to ask the jury to draw "inferences" from the government's failure to disclose that agents had presented McKay with the photographic array.

On appeal, Muse contends that the district court's offer to allow him to question McKay in front of the jury was insufficient to redress the prejudice caused by the government's discovery violation. The government concedes that its failure to disclose McKay's identification violated Rule 16(a)(1)(C), but asserts that the district court did not err in refusing Muse's request for a hearing outside of the jury's presence.

The Federal Rules of Criminal Procedure provide a district court with discretion in determining the proper remedy for a discovery violation. Fed. R. Crim. P. 16(d)(2). Accordingly, a trial court's decision as to the appropriate remedy may only be reversed for abuse of discretion. See United States v. Ford, 986 F.2d 57, 59 (4th Cir. 1993).

Conducting a hearing outside the presence of the jury to "determine the admissibility of identification evidence" has long been recognized as the "prudent" course. See Watkins v. Sowders, 449 U.S. 341, 345 (1981) (collecting cases). But the Supreme Court has expressly held that, because cross-examination before the jury is generally sufficient to determine the trustworthiness of identification evidence, the due

4

process clause of the Fourteenth Amendment does not invariably require a judicial determination of this issue outside the presence of the jury. Id. at 349. The Watkins holding applies equally to a Fifth Amendment due process claim. See United States v. Mills, 704 F.2d 1553, 1563 (11th Cir. 1983), cert. denied, 467 U.S. 1243 (1984). Muse does not argue to the contrary. Nor does he assert another constitutional basis for his claim. Rather, relying on language in Watkins, Muse maintains that refusal to grant a hearing outside of the presence of the jury violated his due process rights.

In Watkins, the Supreme Court did leave open the possibility that, "[i]n some circumstances . . . such a determination [outside the jury's presence] may be constitutionally necessary." 449 U.S. at 349. But Muse has failed to demonstrate any "circumstances" that would constitutionally require such a hearing in this case, or that would even establish that the trial court's refusal to grant such a hearing was an abuse of discretion. It is true that here, in contrast to the two cases consolidated in Watkins, because of the government's violation of Rule 16(a)(1)(C), the defense did not learn of the out-of-court identification until it was revealed during McKay's cross-examination. Significantly, however, Muse conceded that the prosecutor did not knowingly withhold McKay's out-of-court photographic identification; thus, there is no claim of prosecutorial misconduct that might require a special hearing by the court. See United States v. Joya-Martinez, 947 F.2d 1141, 1145 (4th Cir. 1991). Moreover, in view of the fact that McKay and Burnett had already identified Muse in-court, any prejudice that may have arisen from the defense counsel's unknowing introduction of the out-of-court identification was insignificant and does not qualify as a circumstance that constitutionally required a hearing outside the jury's presence. Cf. United States v. Mills, 704 F.2d 1553, 1565 (11th Cir. 1983) (to require a hearing outside the jury's presence, circumstances must be"unusual" or "particularly prejudicial").

For similar reasons, the court below did not abuse its discretion in refusing to grant such a hearing. McKay's out-of-court identification of Muse was simply not significant in this case. When McKay identified Muse in court, McKay explained that, in addition to observing Muse during the sale of the gun, he had met Muse"three to four months before any of this stuff [the weapons transactions] took

5

place." McKay also testified that he had met Muse through Burnett, who, when he identified Muse in-court, stated that he had known Muse well for twenty years. As a result, the main thrust of Muse's defense at trial was not that McKay and Burnett had identified the wrong man, but that their entire testimony was fabricated. Accordingly, McKay's identification of Muse was not a central issue in the case and the district court's refusal to convene a hearing outside the jury's presence does not require reversal. Cf. United States v. Davenport, 753 F.2d 1460, 1462 (9th Cir. 1985) (finding no abuse of discretion under similar circumstances in which a prosecutor had mistakenly informed defense counsel that no out-of-court identification had taken place).

In sum, the district court's refusal to permit an inquiry as to McKay's out-of-court identification of Muse outside the jury's presence neither violated the constitution nor constituted an abuse of discretion.

III.

Muse next maintains that the district court committed reversible error when it instructed the jurors that "punishment of others" was not their concern. He claims that the instruction removed from the jury's consideration his main defense argument -- that McKay and Burnett were lying in the hope of receiving lenient treatment from the government.

Muse concedes that the trial court afforded him broad latitude in cross-examining McKay and Burnett as to their motives for testifying. In addition, defense counsel was permitted, during closing argument, to remark repeatedly on the witnesses' motive and bias against his client and in favor of the government. Muse's attorney urged the jury to take the witnesses' desire to avoid prosecution into account in assessing their credibility. Defense counsel then went further -- suggesting that it was unfair that only his client, Muse, was put on trial, while McKay and Burnett were given a "free ride."

When instructing the jury, the district court gave a lengthy and typical instruction on the factors the jury should consider in assessing witness credibility. The court instructed the jury to consider the wit-

6

nesses' "motives," "bias[ ] or prejudice[ ] for or against either side" and whether "bias or prejudice has colored the testimony of the witness so as to affect the desire and capability of that witness to tell the truth." This instruction was given in the context of the weight the jury should place on witness testimony in determining whether the government had carried its burden of proving Muse's guilt beyond a reasonable doubt.

Later in the instructions, the district court noted several matters that the jury was not to consider in making its decision. For example, the court instructed the jury not to consider evidence that the defendant may have committed crimes other than the crime charged. Additionally, the court instructed the jury not to consider the defendant's possible punishment, but only to consider whether the evidence proved his guilt beyond a reasonable doubt. In this context, the district court also noted that the jury should not consider the "lack of punishment as to others."

Defense counsel objected to the instruction, arguing that "lack of punishment is an issue [because] the witnesses think that they are getting away with something." The district court overruled the objection, and the following colloquy ensued:

> THE COURT: There is nothing that permits an attorney to argue a lack of punishment on a person not charged. . . . You know what the problem with your argument was? It is unfair. . . . You were saying its not fair to punish him and not them. So, I have to tell the jury that that is not the law. The law says you deal with him and not with somebody else. That was your argument, if you recall, and that was not fair. If you had stuck with your argument that they had a sweetheart deal, which is a standard argument --
>
> [DEFENSE COUNSEL]: I understand, judge.
>
> THE COURT: But you went on further to say it wasn't fair, which dealt strictly with punishment, and I thought I should state to the jury that punishment is strictly-- you can't deal with the lack of punishment on somebody else.

7

On appeal, Muse renews his objection to the district court's instruction on the theory that it foreclosed the jury from considering whether McKay and Burnett were lying to avoid punishment.

The fundamental problem with this argument is that it ignores the context in which the district court used the language to which Muse objects. Jury instructions must be viewed in their entirety and in context. See Cupp v. Naughten, 414 U.S. 141, 146-47 (1973). Here the district court initially gave a full and proper instruction with regard to the factors involved in assessing witness credibility. It was only in response to defense counsel's closing argument that it was unfair for Muse to stand trial while the others were given a free ride, that the court instructed the jurors that such an extraneous consideration was not their concern. Cf. United States v. Pena, 930 F.2d 1486, 1491 (10th Cir. 1991) (unless statutorily mandated, the jury's role is to determine guilt or innocence, not punishment). This was within the court's discretion. Although a jury is entitled to acquit on any ground, a defendant is not entitled to inform the jury that it can acquit him on grounds other than the facts in evidence, i.e. a jury has the power of nullification[1] but defense counsel is not entitled to urge the jury to exercise this power. See United States v. Moylan , 417 F.2d 1002, 1006 (4th Cir. 1969). If defense counsel attempts to do so, the trial court may make an appropriate corrective instruction, such as the instruction at issue here. See United States v. Sepulveda, 15 F.3d 1161, 1190 (1st Cir. 1993) (a trial judge "may block defense attorneys' attempts to serenade the jury with a siren song of nullification"), cert. denied, 114 S. Ct. 2714 (1994).

We agree that had the district court used the language to which Muse objected without any similar provocation from defense counsel, the instruction might have been error. Viewed in isolation, the instruction could be construed as improperly removing the witnesses' motives from the jury's consideration in assessing their credibility. However, language in jury instructions may not be viewed in isolation. Cupp, 414 U.S. at 146-47. When all of the instructions here are examined in their entirety and in context, as they must be, it is clear

_____

[1] **See United States v. Kerley**, 838 F.2d 932, 939 (7th Cir. 1988) (although the jury does not have the right to refuse to return a verdict on unreasonable grounds, "[i]t has the power to acquit on bad grounds").

8

that the court appropriately instructed the jury to take into account the witnesses' motives in evaluating their testimony, and also appropriately instructed the jury that it should not acquit the defendant if the evidence (including the witnesses' testimony, whether credible or not) proved Muse's guilt beyond a reasonable doubt, simply because the government was not similarly punishing other people. Accordingly, there was no error.

IV.

Finally, Muse argues that the court below erroneously instructed the jury on the effect of certain stipulations of fact that he had entered into with the government. Muse contends that the district court overstated the effect of these stipulations and essentially directed a verdict for the prosecution on two elements of the § 922(g)(1) offense. Alternatively, he contends that if the stipulations had the effect the court ascribed to them, the court erred in not ensuring that he knowingly and voluntarily waived his right to have the jury find that the elements existed.

A.

Prior to trial, Muse, his attorney, and the government agreed to the following stipulations of fact:

> It is hereby stipulated and agreed between the United States of America and Randall Dwayne Muse, defendant, that:
>
> 1. Prior to September, 1993, Randall Dwayne Muse, the defendant, had been convicted of a crime punishable by imprisonment for a term exceeding one year within the meaning of Title 18, United States Code, Sections 922(g)(1) and 921(a)(20).
>
> 2. Government's Exhibit 1 a High Standard Model [106] .22 caliber semi-automatic handgun,

9

> serial no. 1761198 was manufactured outside the State of Maryland, thereby affecting commerce . . . .

During trial, the government read the stipulations to the jury.

At the conclusion of the trial, the court instructed the jury as follows:

> Now, the Government must prove each of the following elements beyond a reasonable doubt before you may find the defendant guilty of the offense charged . . . . First, that the defendant was previously convicted of a felony .. . . This has been stipulated to; and, as I told you earlier on, a stipulation is an agreement among the parties that this element has been proved or is proved, and the Government does not have to go any further to prove that. So, you should not have to concern yourself with that, because the stipulation establishes that element, the first element that the Government is required to prove. The stipulation says everybody agrees to that. You should go right past that. You have to consider it, certainly, as one of the elements, but the stipulation makes it very clear that you don't have to look into the evidence to see if it has been proven by the government. The stipulation does that.
>
> . . .
>
> Third, that the possession charged was in or affecting interstate commerce. The third element is again stipulated to between the parties. So, you don't have to worry yourself about whether or not the gun was in or affecting interstate commerce.

Muse did not object to this instruction. Nevertheless, on appeal, he contends that the instruction amounted to an improper directed verdict on the prior felony and interstate commerce elements of the offense. Because Muse failed to object to the instruction, our review is limited to "plain error." See United States v. Hanley, 974 F.2d 14, 18 (4th Cir. 1992); Fed. R. Crim. P. 52(b). The Supreme Court has directed that,

10

even if we find the trial court erroneously instructed the jury, "[i]t is the rare case in which an improper instruction will justify reversal of a criminal conviction when no objection has been made in the trial court." Henderson v. Kibbe, 431 U.S. 145, 154 (1977), quoted in United States v. Silva, 745 F.2d 840, 851 (4th Cir. 1984), cert. denied, 470 U.S. 1031 (1985). With this standard of review in mind, we turn to the particular kind of instruction at issue here, one in which the court directed the jury on the effect it should give to stipulations involving elements of a criminal offense.

We note at the outset the special nature of a factual stipulation, agreed to and signed by a defendant, his attorney, and the prosecutor. Such a stipulation is more potent than simply an admission. By so stipulating, a defendant waives the requirement that the government produce evidence (other than the stipulation itself) to establish the facts stipulated to beyond a reasonable doubt. See United States v. Clark, 993 F.2d 402, 406 (4th Cir. 1993). This works to a defendant's benefit when he or she fears that introduction of facts concerning an element of the crime would prejudice his or her case. Indeed, for this reason, defendants often stipulate to a prior felony conviction when charged, as was Muse, with violating § 922(g)(1), because the government is then prohibited from introducing potentially prejudicial evidence concerning the prior felony. See United States v. Rhodes, 32 F.3d 867, 871 (4th Cir. 1994) ("when a defendant offers to stipulate to the fact of his prior felony conviction, evidence of the nature of the conviction is irrelevant and should be stricken") (citing United States v. Poore, 594 F.2d 39 (4th Cir. 1979)), cert. denied, 115 S. Ct. 1130 (1995).

However, such stipulations also exact a price from the defendant. Because a stipulation induces the government not to offer evidence to prove the facts involved in the stipulation, a defendant may not argue at trial or on appeal that the stipulation is insufficient to prove beyond a reasonable doubt the facts or elements to which he has stipulated. See United States v. Reedy, 990 F.2d 167, 169 (4th Cir. 1990). A defendant is not allowed to produce evidence to contradict or challenge the existence of facts to which he has validly stipulated. This restriction on the defendant's ability to contest the existence of certain facts or elements (in exchange for the government's promise not to introduce evidence on the subject) is what distinguishes fact stipula-

11

tions from more general evidentiary admissions such as confessions or other statements, which the defendant may freely contradict at trial.

Thus, in return for the benefit a defendant may receive from a stipulation, it provides powerful evidence for the prosecutor. A stipulation does not, however, entitle the prosecution to a directed verdict or exact the ultimate price from a defendant: a "guilty plea" with respect to an element of the crime. While a valid stipulation relieves the prosecution of the burden of producing any other evidence in order to establish the fact stipulated, it does not relieve the prosecution from the burden of "proving every element of the crime" beyond a reasonable doubt. Cf. Estelle v. McGuire, 502 U.S. 62, 69 (1991) (this burden "is not relieved by a defendant's tactical decision not to contest an essential element of the offense"). As this court recently held in a case similarly involving a felon-in-possession charge, when a defendant pleads not guilty to the offense, "the district court must instruct the jury that the government must prove beyond a reasonable doubt that at the time the defendant possessed the firearm he had a qualifying previous felony conviction . . . ." United States v. Milton, 52 F.3d 78, 81 (4th Cir.), cert. denied, 116 S. Ct. 222 (1995). In other words, the district court may not remove the element from the jury's consideration, even though the defendant has stipulated to that element. Id. To "remove from the jury's consideration an element of the crime" would, as the Second Circuit remarked in a case virtually identical to Milton, violate the "very foundation of the jury system." United States v. Gilliam, 994 F.2d 97, 100 (2d Cir.), cert. denied, 114 S. Ct. 335 (1993).

Milton and Gilliam involved defendants who stipulated to the existence of prior felony convictions and then asked the court to withdraw the element from the jury's consideration, and to preclude the government from mentioning the prior felony convictions in any manner. Milton, 52 F.3d at 80; Gilliam, 994 F.2d at 99. The defendants thus sought to have their trials focused solely on the issue of whether they had possessed weapons. In both cases the courts rejected this proposal, noting, "[w]hatever the basis of the reasoning, be it Congressional mandate or the duty of the jury to make a totally informed judgment, there is virtual judicial unanimity in the belief that the jury must be informed of all the elements of the crime charged." Milton, 52 F.3d at 81 (quoting Gilliam, 994 F.2d at 102). Milton and Gilliam

12

therefore teach that once a defendant pleads not guilty to a crime and elects to proceed before a jury, the district court must instruct, and the jury must consider, whether the government has proved beyond a reasonable doubt all the elements involved in the crime charged -- even if the defendant and the government have entered a stipulation as to certain of those elements.

Milton and Gilliam are, of course, entirely consistent with the fundamental principle that if a defendant avails himself of his Sixth Amendment right to trial by jury, only the jury can reach the "requisite finding of `guilty.'" Sullivan v. Louisiana, 508 U.S. 275, ___, 113 S. Ct. 2078, 2080 (1993) (citation omitted). Thus, no matter "how overwhelming the evidence," a judge "may not direct a verdict for the [government]." Id. Although a fact stipulation may have the effect of providing proof beyond a reasonable doubt of the existence of the facts that make up an element, a conviction is not valid unless a jury considers the stipulation and returns a guilty verdict based on its finding that the government proved the elements of the crime beyond a reasonable doubt. A court may not by-pass the jury and enter its own finding that the element has been established. As the Supreme Court recently explained, the "Constitution gives a criminal defendant the right to have a jury determine, beyond a reasonable doubt, his guilt of every element of the crime with which he is charged." United States v. Gaudin, 115 S. Ct. 2310, 2320 (1995); see also United States v. Piche, 981 F.2d 706, 716 (4th Cir. 1992) (a district court may not "direct a verdict, even a partial verdict, for the government even though the evidence is overwhelming or even undisputed on the point"), cert. denied, 508 U.S. 916 (1993).

This limitation on the extent to which the jury's province can be invaded is based, at least to some extent, on the earlier referred to "undisputed power," of juries to nullify guilty verdicts. See Moylan, 417 F.2d at 1006 ("We recognize the undisputed power of the jury to acquit, even if its verdict is contrary to the law as given by the judge and contrary to the evidence.") Stated differently, the jury has "the power to bring in a verdict in the teeth of both law and facts." Horning v. District of Columbia, 254 U.S. 135, 138 (1920). Thus, trial courts are foreclosed from instructing juries not to consider certain elements of a crime, even if the case involves a stipulation encompassing those elements.

13

In view of the special evidentiary character of a stipulation -- more potent than an admission but less draconian than a "guilty plea" -- and the power of the jury to "acquit for any reason," Moylan, 417 F.2d at 1006, developing the proper language for a jury instruction regarding the effect of stipulations as to an element of a criminal offense requires a trial court to walk a careful line. The government is entitled to have the court inform the jury of the powerful effect of a stipulation but a court cannot direct a verdict, even a partial verdict, against the defendant.

We have been unable to find much guidance in the case law; indeed, no appellate case seems to have set forth proper language for a jury instruction in the situation at hand.[2] Other circuits have, however, developed short and simple model instructions. For example, the following jury instruction is utilized in the Eighth Circuit: "The Government and the defendant have stipulated -- that is, they have agreed -- that certain facts are as counsel have just stated. You should therefore treat these facts as having been proved." Model Criminal Jury Instructions for the Eighth Circuit 24 (West 1994) (emphasis added). See also Ninth Circuit Manual of Modern Jury Instructions -- Criminal 17 (West 1995) ("The parties have agreed to certain facts that have been stated to you. You should therefore treat these facts as having been proved.") (emphasis added). In light of the special evidentiary force of a stipulation, yet the inability of the trial court to remove even a stipulated fact from the jury's consideration or to mandate that the jury return findings as the court directs, these model instructions appear to strike the appropriate balance.

_____

2 For example, although in Clark we quoted language from an instruction to the jury that, due to the defendant's stipulation to an element of the offense, "that element has already been established and is not for your consideration," 993 F.2d at 406 (emphasis added), we had no occasion or reason to determine the validity of the underscored language. We cited the language only to support our holding that the defendant, in stipulating and in consenting to this instruction, had intended the stipulation to provide sufficient evidence to establish the element. See also United States v. Houston, 547 F.2d 104, 107 (9th Cir. 1976) (without quoting or paraphrasing any portion of the jury instruction, the court approved the submittal of a stipulation to the jury as conclusive proof of the fact stipulated to).

14

The district court's instruction in this case, although not as concise as the model instructions, struck a similar balance. On the one hand, the court emphasized the force of the stipulation-- "the government does not have to go any further [than the stipulation] to prove [an element of the offense]." On the other, the instruction at issue here, like the model instructions, was couched in precatory language. The court below repeatedly instructed the jury that, due to the stipulations, it "should" find the facts that formed the basis for two of the elements existed, and that it "should" therefore find that the government had proved those elements. Additionally, the court specifically instructed the jury that it had to <u>consider</u> all the elements, even those encompassed in the stipulations: "You have to consider[the felony element], certainly, as one of the elements, but the stipulation makes it very clear that you don't have to look into the evidence to see if it has been proven by the government."

For these reasons, the lower court's instruction to the jury that it must "consider" the elements, and that it"should" find that the government established those elements through the stipulations, was not erroneous. To the extent that certain language in the instructions could be construed as going beyond the directive that the jury "should" find the government had established the elements by the stipulations, such error (if any) is certainly not"plain." <u>See United States v. Matzkin</u>, 14 F.3d 1014, 1018 (4th Cir. 1994) (errors in instructions are not grounds for reversal unless they are "obvious" and clear).

B.

Alternatively, Muse argues that if the district court's instruction with regard to the fact stipulations was proper, the district court erred in not following the procedures outlined in Rule 11 of the Federal Rules of Criminal Procedure to determine if he knowingly and voluntarily entered into the stipulations. He maintains that Rule 11 procedures were required before the court could validly remove the stipulated elements from the jury's consideration. This argument is meritless.

This theory can be disposed of summarily because, as noted above, the district court's instruction did <u>not</u> result in the removal of the stip-

15

ulated elements from the jury's consideration, nor did it result in an improperly directed partial verdict in the government's favor. Because the jury was still required to consider and return a verdict finding Muse guilty of all of the elements of the offense, his theory is without support.

Of course, the issue would be different if Muse had stipulated to all the elements of the offense. In such a case, the knowing and voluntary nature of Muse's entry into the stipulations (amounting effectively to a de facto guilty plea) would raise more significant concerns. Cf. United States v. Struther, 578 F.2d 397, 403 (D.C.Cir. 1978) (when stipulations are tantamount to a guilty plea, Rule 11-type procedures required); United States v. Brown, 428 F.2d 1100, 1102 (D.C.Cir. 1970) (same). But see United States v. Schuster, 734 F.2d 424, 425 (9th Cir. 1984) (Rule 11 limited to pleas of guilty or nolo contendere); United States v. Robertson, 698 F.2d 703 (5th Cir. 1983) (Rule 11 limited by its terms to guilty pleas and therefore does not apply even if the defendant stipulates to all the elements of an offense). However, here, although Muse stipulated to two of the elements, he vigorously contested the existence of the third, and most critical, element at trial. We, therefore, need not address the question of whether Rule 11-type procedures would be required if the stipulations on the elements amounted to a de facto guilty plea on the charge as a whole.

For the foregoing reasons, Muse's conviction is

AFFIRMED.

16