**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 23-4222

UNITED STATES OF AMERICA

Plaintiff - Appellee

v.

JEROD MONTREL ASKEW

Defendant - Appellant.

Appeal from the United States District Court for the Eastern District of Virginia, at Norfolk.  Rebecca Beach Smith, Senior District Judge.  (2:21−cr−00008−RBS−DEM−1)

Argued:  January 26, 2024                          Decided:  April 10, 2024

Before WILKINSON, NIEMEYER, and BENJAMIN, Circuit Judges.

Affirmed by published opinion. Judge Wilkinson wrote the opinion, in which Judge Niemeyer and Judge Benjamin joined.

**ARGUED:**  Robert James Wagner, ROBERT J. WAGNER PLC, Richmond, Virginia, for Appellant.  Jacqueline Romy Bechara, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee.  **ON BRIEF:**  Jessica D. Aber, United States Attorney, Aidan Taft Grano-Mickelsen, Assistant United States Attorney, Matthew Heck, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Richmond, Virginia, for Appellee.

WILKINSON, Circuit Judge:

Following a jury trial, Jerod Montrel Askew was convicted of various crimes related to drug trafficking, including two counts of possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c). He now appeals his convictions on various grounds. First, he asserts that the jury instructions for the firearm-related charges were erroneous and prejudicial. Second, he contends that the evidence was insufficient to support a guilty verdict for the firearm-related convictions. Next, he claims that the district court abused its discretion in offering a *sua sponte* jury instruction about the legality of the search warrants underpinning the investigation. Finally, he argues that the district court abused its discretion in denying his motion for a mistrial after the prosecution referred to his invocation of the right to counsel during closing arguments. After carefully reviewing each claim, we affirm Askew's conviction.

I.

A.

Law enforcement began investigating Askew for suspected drug trafficking in early 2020. Police first employed visual and electronic surveillance, tracking Askew to the turf of known narcotics distributors. Based on the information gleaned from surveillance, the police obtained search warrants for Askew's vehicle and apartment. With the warrants secured, police pulled Askew over while he was driving his Jeep and prompted their K-9 detection dog to sniff the car. The dog alerted to the center console, inside of which officers discovered a loaded firearm and a crumpled, empty plastic baggie. Askew told the police

2

that "there was probably marijuana in it earlier." J.A. 305. Police recovered the firearm, the baggie, and two cellphones from the vehicle.

While the traffic stop was ongoing, a different squad of officers executed the search warrant at Askew's apartment. By all indications, the apartment appeared to be the nerve center for a drug trafficking enterprise. There police found a noteworthy collection of drugs and drug paraphernalia: copious quantities of heroin, cocaine, and marijuana, in addition to packaging supplies, cutting materials, scales, sifters, and blending equipment. Police also discovered six firearms, some of them loaded; over $11,000 in cash hidden in a trashcan; multiple cellphones; and a storage unit rental agreement in Askew's name. Upon these findings, Askew was placed under arrest and transported to the storage unit listed on the rental agreement, accompanied by a new search warrant for that property.

The storage unit contained more investigatory fruits. Law enforcement discovered multiple bags of marijuana, as well as various tools which could be used to package and distribute the drug, including a kilo press form, a sifter, and cutting agents. There were also various baggies containing cocaine residue. Within a safe, police found more marijuana, cash, a loaded firearm, and firearm magazines. All of this evidence would be collected and used by the government in its case-in-chief in the trial to come.

### B.

Askew ultimately proceeded to trial on eight charges, including one count of conspiracy to distribute narcotics in violation of 21 U.S.C. §§ 841, 846; five counts of possession with intent to distribute in violation of 21 U.S.C. § 841; and two counts of possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C.

§ 924(c).[1] Along with the physical evidence recovered from Askew's apartment and storage unit, the prosecution presented evidence from the cellphones found in Askew's vehicle. Data extractions revealed several text conversations between Askew and his contacts in the drug industry, where they discussed selling and trading narcotics and firearms. Two of the firearms discussed in these text conversations matched the descriptions of those recovered from the searches. The prosecution also discussed its electronic surveillance of Askew and testified that his patterns of movement were consistent with drug dealing. Additionally, the prosecution offered a police detective as an expert witness in drug distribution and firearms, who testified that firearms are considered "a tool of the trade" in drug trafficking, "not only to protect yourself from robbery but also to protect the assets." J.A. 590.

After a three-day trial, the jury returned verdicts of guilty on all counts. Askew moved for a new trial as well as for a judgment of acquittal, both of which the district court denied. He was sentenced to a total term of 198 months of imprisonment and five years of supervised release. Askew timely appealed.

---

[1] The specific counts were as follows: (1) Conspiracy to distribute heroin, cocaine, cocaine base, and marijuana, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1), 846; (2) Possession with intent to distribute 100 grams or more of heroin, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B); (3) Possession of a firearm in furtherance of a drug trafficking crime (heroin), in violation of 18 U.S.C. § 924(c)(1)(A)(i); (4) Possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C); (5) Possession with intent to distribute cocaine base, in violation of 21 U.S.C. § 841(a)(1), 841(b)(1)(C); (6) and (7) Possession with intent to distribute marijuana, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(D); (8) Possession of a firearm in furtherance of a drug trafficking crime (marijuana), in violation of 18 U.S.C. § 924(c)(1)(A)(i).

4

II.

A.

Askew first claims that the jury instructions for his firearm-related charges were worded in such a way as to compel the jury to find him guilty. We begin by recounting what the jury was told about the firearm-related charges.

Askew's convictions were for possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c). The court informed the jury that the government had to prove three elements beyond a reasonable doubt in order to sustain its burden of proof on this charge: (1) that Askew "committed the drug trafficking crime of possession with intent to distribute"; (2) that he "knowingly possessed a firearm"; and (3) that his "possession of a firearm was in furtherance of the commission of a drug trafficking crime." J.A. 765. It is this third element, the "in-furtherance-of" element, at issue in this appeal.

The court defined the relevant terms of this element as follows: "The word 'possess' means to own or to exert control over something." J.A. 766. "The term 'knowingly' . . . means that he was conscious and aware of his actions, realized what he was doing or what was happening around him, and he did not act because of ignorance, mistake, or accident." J.A. 742.  And the phrase "'[i]n furtherance of' means the act of furthering, advancing, or helping forward," meaning "the government must prove that the possession of a firearm furthered, advanced, or helped forward the drug trafficking crime." J.A. 767.

The court then discussed how the jury could reach the conclusion that the firearms were used in furtherance of the drug trafficking crimes:

5

For drug trafficking crimes, factors that the jury may consider in making the determination include the following: The type of drug activity that was being conducted, the accessibility of the firearm, the type of firearm, whether the firearm was stolen, the status of the possession, whether it was legitimate or illegal, whether the firearm was loaded, the proximity of the firearm to either drugs or drug profits, the time and circumstances under which the firearm was found, whether the firearm provided a defense against the theft of drugs and/or reduced the probability that such theft might be attempted. The possession is in furtherance if the purpose of the firearm is to protect or embolden the defendant.

Distribution of drugs and the common sense recognition that drug dealing is a dangerous and violent enterprise may support an inference that the defendant's possession of a firearm was to facilitate drug dealing.

J.A. 767–78.

Askew challenges the last paragraph of these instructions. He argues that this portion of the charge compelled the jury to find that "a gun found in the presence of drugs will necessarily be connected to the violence inherent in drug dealing" and thus conclude that "the mere presence of firearms in the general vicinity of controlled substances" satisfied the in-furtherance-of element. Appellant's Opening Br. 29–31.

We disagree. When reviewing the propriety of jury instructions, we inquire "whether the instructions construed as a whole, and in light of the whole record, adequately informed the jury of the controlling legal principles without misleading or confusing the jury to the prejudice of the objecting party." *Noel v. Artson*, 641 F.3d 580, 586 (4th Cir. 2011). Further, "we accept at the outset the well-established proposition that a single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge." *Cupp v. Naughten*, 414 U.S. 141, 146–47 (1973). Such an approach "recognize[s] that a judgment of conviction is commonly the culmination of a

6

trial which includes the testimony of witnesses, argument of counsel, receipt of exhibits in evidence, and instruction of the jury by the judge." *Id.* at 147. In other words, "not only is the challenged instruction but one of many such instructions, but the process of instruction itself is but one of several components of the trial which may result in the judgment of conviction." *Id.*

Here, the jury was repeatedly informed that it needed to find that the firearms furthered, advanced, or helped forward the drug trafficking counts, in precise conformity with the way this court has interpreted the in-furtherance-of element. *See United States v. Lomax*, 293 F.3d 701, 705 (4th Cir. 2002). The jurors were supplied with a range of factors to consider that this court has endorsed for making that exact determination. *See id.* We have little problem, then, in concluding that "the district court adequately instructed the jury regarding the elements of the offense." *United States v. Wilson*, 198 F.3d 467, 469 (4th Cir. 1999).

Nonetheless, Askew asserts that the jury instructions were defective in that they outright compelled the jury to find Askew guilty of the charge. This obligation, he claims, came from a false legal premise. The court's reference to "the common sense recognition that drug dealing is a dangerous and violent enterprise" led inexorably, in Askew's view, to a mandatory conclusion—that the firearm was used in furtherance of the drug trafficking crimes.

We are not so convinced. There is no false legal premise in these instructions. Jurors were told that the dangerous and violent nature of drug dealing was "a common sense recognition." But the jurors were then advised that the province of common sense was fully

7

their own. In other portions of the charge, the court informed the jury that it could draw "such reasonable inferences as you feel are justified in light of your experience and common sense." J.A. 731. Jurors were "expected to use [their] good sense in considering and evaluating the evidence in the case" and to "give such evidence a reasonable and fair construction in the light of [their] common knowledge of the natural tendencies and inclinations of human beings." J.A. 729. They were told "several times" that they were "the sole judges of the facts of this case." J.A. 736.

It is difficult to imagine that jurors, repeatedly told that they were in control of their own common sense, would believe that the court somehow wrested that very control from them. Such a result would defy the nature of common sense—something not to be prescribed from above, but instinctively formed within each juror. Common sense is among the distinctive contributions that jurors bring to criminal justice, and the instructions left it fully intact. The jury was thus not force-fed a false legal premise. Rather, it was encouraged to use its own perceptions about the defendant's activities and to draw its own conclusions.

The language to which Askew now objects was at most a permissive inference, which the jury was free to accept or reject at will. *See Cnty. Ct. v. Allen*, 442 U.S. 140, 157 (1979). Such inferences "suggest[] to the jury a possible conclusion to be drawn if the State proves predicate facts, but do[] not require the jury to draw that conclusion." *Francis v. Franklin*, 471 U.S. 307, 314 (1985), *holding modified on other grounds by Boyde v. California*, 494 U.S. 370 (1990). Viewing the instructions as a whole, which we are required to do, we discern nothing approaching reversible error here.

8

B.

Askew also contends that the instructions were erroneous and prejudicial because they were incomplete. He asserts that the district court erred in failing to *sua sponte* provide the jury with two clarifying instructions. First, he claims that the district court should have informed the jury that the mere presence of firearms at the scene of a drug crime, without further evidence, was insufficient to show that the firearms were possessed in furtherance of the drug trafficking crimes. Second, he posits that the district court should have told the jury that Askew had a constitutional right under the Second Amendment to possess firearms for his own protection, given he was a legal possessor of firearms at the time of his arrest. Because Askew failed to raise these claims below, our review is for plain error. Such review, of course, erects a demonstrable hurdle for Askew to overcome. *See Greer v. United States*, 593 U.S. 503, 508 (2021).

It is a hurdle that Askew cannot surmount. First, Askew's "mere presence" instruction was unnecessary. The jury was already well-informed that the government needed to prove something more than bare proximity to drugs in order to demonstrate that the firearms were used in furtherance of trafficking. The district court emphasized to the jury that the government had to show that Askew had knowing ownership or control over the firearms, which he then used to further, advance, or help forward his drug trafficking crimes. There is no "reasonable probability" that the jury could have convicted Askew of this offense while also believing that the mere presence of the firearms near the narcotics sufficed to prove the government's case. *Id.* at 504. "To whatever extent [Askew's] proposed instruction is relevant, the district court's charge to the jury—taken as a whole—

9

sufficiently accounted for it." *United States v. Passaro*, 577 F.3d 207, 222 (4th Cir. 2009). Thus, it is highly unlikely that the jury would have changed its mind had it been offered this redundant clarification.

As for Askew's proposed Second Amendment instruction, it is unclear how the knowledge that Askew, prior to this conviction, could legally possess firearms would alter the jurors' calculus. While Askew may have had a right to possess firearms, he had no right to possess them in furtherance of his drug dealings. Indeed, a government witness testified that drug dealers employ guns for personal protection in order to help forward their trafficking enterprises. *See* J.A. 595 ("Drug dealers possess firearms, number one, for personal protection[.] [W]hen you have a large amount of extremely valuable drugs, or you have a large amount of cash . . . you need those firearms to protect yourself."). The instruction, then, would have been irrelevant to the whole purpose of Askew's possession, and there is not a reasonable probability that its issuance would have led to an acquittal.

For the foregoing reasons, we see no error in the totality of the district court's instructions.

## III.

Askew next argues that there was insufficient evidence to support his convictions on the firearm-related charges. This court will sustain a jury's verdict when there is substantial evidence, construed in the light most favorable to the government, to support it. *United States v. Mathis*, 932 F.3d 242, 258 (4th Cir. 2019). A reviewing court "assume[s] that the jury resolved all contradictions in the testimony in favor of the government" and will "reverse a conviction on insufficiency grounds only when the prosecution's failure is

10

clear." *United States v. Moye*, 454 F.3d 390, 394 (4th Cir. 2006) (en banc) (internal quotation marks omitted).

Askew contends that the government was only able to demonstrate that the firearms were present and proximate to the narcotics, not that they were used to further or advance the drug trafficking activities. But this seriously understates the array of evidence the government presented to tie the guns to the drugs, and the reasonable inferences the jury could have made in light of that presentation.

Law enforcement testified to the results of data extractions performed on Askew's cell phones. These text message conversations revealed that Askew carried firearms with him for protection during his drug transactions. *See, e.g.*, J.A. 526 ("Mr. Askew . . . [is] talking about the firearm. Doesn't want anyone to know he's back out here selling drugs and has a gun."). The evidence clearly showed that Askew's drug contacts overlapped with his gun contacts, with Askew's dealers offering him unlicensed firearms and Askew promising the dealers more work or drugs in return. Time and time again, the jury saw that in Askew's drug trafficking business, guns and drugs went hand in hand. *See* J.A. 526 ("So he's asking if he's going to give him the gun, and he will give him a Q, which is slang for a quarter . . . ounce."); 530 ("So they are negotiating on the price for a firearm. Askew responds, 'I give you [drugs] when I get it.'"); 536 ("So he's going to trade narcotics for the firearm."). These examples were buttressed by expert testimony that, in general, "firearms are a very significant tool of the [drug] trade." J.A. 595.

Moreover, the jury was presented with evidence of a substantial quantity of drugs, drug paraphernalia, cash, and firearms scattered throughout Askew's apartment and storage

11

unit. The evidence in its totality painted a picture of a sophisticated drug trafficking enterprise of which every component was a vital tool. Not only was it reasonable to see the apartment and storage unit as hubs for narcotics distribution, but it was also reasonable to conclude that any drug-related devices located there were helping to forward the business. *See United States v. Moore*, 769 F.3d 264, 270 (4th Cir. 2014) (holding substantial evidence supported § 924(c) conviction where a distribution-level quantity of narcotics, a large amount of cash, and drug distribution equipment were found in the same apartment as firearms); *United States v. Penniegraft*, 641 F.3d 566, 574 (4th Cir. 2011) (same). Just as a juror could have reasonably concluded that any scale or sifter was employed by Askew to advance his drug trafficking business, so too could that juror have concluded that the firearms present furthered the same mission.

The question of whether the possession of a firearm furthered, advanced, or helped forward a drug trafficking crime "is ultimately a factual question." *Lomax*, 293 F.3d at 705. Askew has not made the case for upsetting the jury's factual conclusion.

IV.

Askew next claims that the district court abused its discretion in offering a *sua sponte* jury instruction about the propriety of the search warrants issued.

The challenged *sua sponte* instruction was the result of trial testimony that the district court found troublesome and potentially misleading. During cross examination of a government witness, defense counsel sought to undermine the proposition that Askew had knowledge of the narcotics found in his apartment, as many of them were inside a zipped suitcase. Defense counsel asked the witness, "In your line of work, you heard the

12

phrase something in plain view?" J.A. 414. The witness responded affirmatively. Defense counsel continued, "As far as you can tell, the drug evidence was not in plain view because it was inside a piece of luggage?" J.A. 414. At this point, the court interrupted and excused the jury.

Outside the presence of the jury, the district court expressed its concerns with defense counsel's line of questioning, telling him that his mention of plain view was misleading because the doctrine was not at issue in the case. Thus, it cautioned, defense counsel's questioning about whether the drugs were in plain view could give the jury the impression the search was illegal, though its legality had not been challenged. Defense counsel explained he was merely trying to get at Askew's lack of knowledge, and that his questions had "nothing to do with the search doctrine." J.A. 417. The court advised defense counsel that he could make that point without using obviously legal language.

The court brought the jury back and the cross-examination continued. Defense counsel was able to question the witness about Askew's knowledge while avoiding the phrase "plain view." Court thereafter adjourned for the day. The next morning, the court addressed the legality of the government's searches in a *sua sponte* instruction to the jury:

> One thing that I would tell you as you start today, that as a matter of law the search warrants in this case were properly issued by a judge of proper jurisdiction, and they were properly executed by law enforcement. There are no legal issues involving the search warrants in this case. We may proceed.

J.A. 437–38.

13

Askew challenges this comment on appeal, contending it lacked a legal foundation and that it biased the jury by placing an imprimatur on the government's case and calling into question the competence of defense counsel.

We review the district court's decision to give a jury instruction for abuse of discretion. *Passaro*, 577 F.3d at 221. In doing so, we "give space to the trial's court's discretion, asking only whether the judge ran out of bounds." *United States v. Smith*, 21 F.4th 122, 136 (4th Cir. 2021). The choice is "entitled to substantial deference, because a district court is much closer than a court of appeals to the pulse of the trial." *United States v. Russell*, 971 F.3d 1098, 1104 (4th Cir. 1992) (internal quotation marks omitted).

We find no abuse of discretion here. The district court worried that the case might skitter off into a debate over plain view search doctrine. It appropriately sought to head off any confusion by issuing a short and sweet corrective. Trials by their very nature can be subject to detrimental detours, and the job of a trial judge is to keep a case on track. "[T]he decision whether to issue a[] clarification" is thus "left to the sound discretion of the district court." *United States v. Smith*, 62 F.3d 641, 646 (4th Cir. 1995); *see also United States v. Muse*, 83 F.3d 672, 677 (4th Cir. 1996) (holding that it was "within the court's discretion" for it to "instruct[] the jurors that . . . an extraneous consideration was not their concern."); *United States v. Shirley*, 435 F.2d 1076, 1078 (7th Cir. 1970) (affirming liberty of trial judge to "giv[e] a supplemental or modified instruction designed to prevent the jury from becoming confused and deciding the case on a false basis.").

Here the corrective instruction was minimally invasive, intentionally tailored to reduce any perceived endorsement or criticism of one side or the other. The district court

14

intervened without signaling any disapproval of defense counsel, merely asking the jury to step out for a moment. The corrective was not even issued until the next morning, and then only briefly and casually. Its accuracy as a statement of law was apparent, and Askew's challenge to the comment is unavailing.

V.

We turn finally to Askew's contention that he was entitled to a new trial because the prosecution referred to his invocation of the right to counsel during closing argument.

A.

The portion of the prosecution's closing argument being challenged on appeal relates back to testimony from earlier in the trial. The detective who initiated the traffic stop of Askew testified that, after Askew was pulled over, he was read his *Miranda* rights and informed he was under investigation for drug trafficking, to which Askew replied they "must have the wrong person." J.A. 333. However, when Askew was told that law enforcement had been tracking his whereabouts, his "eyes got big, he broke eye contact and looked away . . . and immediately asked for his lawyer." J.A. 333. Defense counsel did not object to this testimony when it was brought out at trial. Instead, on cross-examination, defense counsel doubled down on the point, asking the witness, "And Mr. Askew, after he said you must have the wrong person, when you questioned him further, he said he would like to talk to an attorney, correct?" J.A. 350.

This testimony laid the groundwork for portions of the parties' closing arguments. During closing, defense counsel opined to the jury that Askew was "polite and respectful" to the police, which is "not the normal behavior" for someone who is guilty of drug

15

trafficking. J.A. 694. Defense counsel emphasized that "when they confront[ed] [Askew] and said we are investigating [him] for drug dealing, he said, 'You got the wrong man.' That's what he said. That's what you'd expect somebody who is innocent to say to police." J.A. 694–95.

The prosecution picked up on this thread in its rebuttal argument, noting that denial of guilt is "an obvious thing to say" whether one is guilty or innocent. J.A. 718. But the prosecution noted how Askew's demeanor changed when law enforcement informed him that he had been surveilled: "that is when he got nervous, that's when he asked for an attorney." J.A. 718. At that point in the closing argument, defense counsel interrupted the prosecution, and the jury was excused. Defense counsel then moved for a mistrial, asserting that the government violated Askew's due process rights by commenting on his "exercise of his right to remain silent and to ask for an attorney." J.A. 719.

The district court denied the motion, finding that the prosecutor's "stray reference" to Askew's use of his *Miranda* rights did not amount to an impermissible "argument that the jury should use Defendant's Constitutional right to remain silent as evidence of his guilt." J.A. 1082–83. Thus, no due process violation had occurred.

B.

Askew challenges the district court's determination on appeal, asserting that the prosecution's reference to his invocation of the right to counsel violated his due process rights and entitled him to a new trial. We review a district court's denial of a motion for a mistrial for abuse of discretion. *United States v. Wallace*, 515 F.3d 327, 330 (4th Cir. 2008).

16

As established by the Supreme Court in *Doyle v. Ohio*, the Due Process Clause guarantees that defendants who invoke their constitutional rights to silence and counsel will not have that invocation used against them at trial. *See* 426 U.S. 610, 619 (1976); *Wainwright v. Greenfield*, 474 U.S. 284, 295 n.13 (1986). Such protection comes from the "implicit promise[]" in *Miranda* warnings "that any exercise of those rights will not be penalized." *Wainwright*, 474 U.S. at 292.

This does not mean, however, that every fleeting reference to those invocations constitutes a *per se* due process violation. Instead, *Doyle* and its progeny protect against a very specific danger: that the government will *exploit* the defendant's invocation of his right by using it as evidence of his guilt or unreliability at trial. *See Noland v. French*, 134 F.3d 208, 216 (4th Cir. 1998) (holding that *Greenfield* "does not impose a prima facie bar against any mention whatsoever of a defendant's right to request counsel, but instead guards against the exploitation of that constitutional right by the prosecutor."). So long as the allusion to the invocation was "not designed to draw meaning from silence," the defendant's rights have not been violated. *Anderson v. Charles*, 447 U.S. 404, 409 (1980). The fact that some matter may naturally surface in the course of a trial narrative does not answer the important question of whether the government sought to take impermissible advantage of it.

We conclude that the prosecution's brief remark here did not amount to impermissible exploitation. As an initial matter, the prosecution was not alluding to anything that had not already been revealed and unobjected to during trial testimony. Indeed, defense counsel himself had referenced the invocation during cross-examination.

17

Moreover, during closing argument, the prosecution only mentioned the invocation in rebuttal, after defense counsel characterized Askew's interaction with law enforcement as entirely innocuous. In large part, then, the prosecution was simply contesting Askew's behavior towards police and providing a clarification on the "narrative[] . . . regarding [Askew's] apprehension and arrest." *Noland*, 134 F.3d at 216; *see also United States v. Meredith*, 824 F.2d 1418, 1429 (4th Cir. 1987) (noting that "defense counsel appears to have invited the prosecutor's comment by his own remarks" and that "[w]hen defense counsel opens the door in this way, we allow the prosecutor broad latitude in response."). Further, the prosecution did not linger on the point or encourage the jury to draw an inference of guilt from the invocation, instead segueing directly into its next line of argument. Thus, because the "testimony only made passing reference to *Miranda*, and the prosecutor did not specifically exploit [Askew's] exercise of his *Miranda* rights," we find no Due Process violation. *Id.* at 216–17.

The prosecution's remark in no event warrants a new trial. We have long been cautioned not to allow the smallest part of a proceeding to supplant the larger whole. *See Johnson v. United States*, 318 U.S. 189, 202 (1943) (Frankfurter, J., concurring). The contested remark was one-off and cursory. Indeed, the entirety of the comment comprises one line in a 425-page transcript. If this remark is not deemed "isolated," it is hard to imagine what would be. *United States v. Mitchell*, 1 F.3d 235, 241 (4th Cir. 1993).

## VI.

For the foregoing reasons, the judgment of the district court is

*AFFIRMED.*

18