NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 11a0065n.06

No. 09-5226

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **FILED** |
| | ) | **Feb 01, 2011** |
| Plaintiff-Appellee, | ) | LEONARD GREEN, Clerk |
| | ) | |
| v. | ) | On Appeal from the United States |
| | ) | District Court for the Eastern |
| JESSIE MONGHAN, | ) | District of Kentucky |
| | ) | |
| Defendant-Appellant. | ) | |

Before:      BOGGS and COOK, Circuit Judges; and CARR, District Judge.[*]

BOGGS, Circuit Judge.  On November 5, 2008, Jessie Monghan was convicted of bank robbery, being a felon in possession of a firearm, and brandishing a firearm while committing a crime of violence.  *See* 18 U.S.C. §§ 2113(a), 2113(d), 922(g)(1), 924(c)(1).  Monghan was sentenced to 437 months in custody.  Monghan challenges both his convictions, which we affirm, and his sentences for being a felon in possession of a firearm and bank robbery, which we reverse.

I

On July 27, 2005, two African-American men robbed the Fort Wright, Kentucky, branch of Huntington Bank.  The first robber, who wore a bandana, a skullcap, and sunglasses, dragged the bank's acting manager, Jason Fraley, from his office at gunpoint.  The second robber, who wore a

---

[*] The Honorable James G. Carr, United States District Judge for the Northern District of Ohio, sitting by designation.

camouflage fisherman's hat and a dark long-sleeved shirt, pointed a gun at a teller, Stephanie Kendall, and threatened to shoot her if she did not give him money. Kendall complied and gave the second robber money, although she covertly included a dye pack with the money. The second robber next pointed his gun at another teller, Angela Valler, and demanded money. Valler too complied, but like Kendall, she also included a dye pack. The second robber then jumped the teller counter, pointed his gun at both Kendall and Valler, and demanded more money. Kendall and Valler complied. The first robber pistol-whipped Fraley, knocking him to the ground, and the two robbers fled the bank with $10,046 in cash. Color surveillance cameras inside the bank recorded the entire robbery.

A witness observed the two men run to a maroon sedan with Ohio plates and drive away. Dye-stained bills were recovered in front of the bank, and two dye-stained latex gloves were located two blocks away. DNA recovered from one of the gloves was determined to be consistent with Monghan's DNA. Although Monghan's DNA matched that in the glove, one in 303 African-American men have DNA that would also match that found in the glove.

On August 23, 2005, police stopped Jessie Monghan and Randall Sutton in a maroon sedan in Cincinnati, Ohio. A derringer revolver was found in Sutton's waistband and a search of the vehicle yielded latex gloves, a black long-sleeved shirt, and sunglasses. Forensic testing of a stain in the vehicle's interior determined that the stain was caused by a dye consistent with that used in the bank's dye packs. An officer who examined both the revolver taken from Sutton and the surveillance footage from the robbery later testified that the revolver appeared to be the gun used by the second robber.

The vehicle was registered to Joquina Brooks, Sutton's girlfriend. Prior to the robbery, Brooks worked at a business located seventy feet from the bank. Without providing notice to her employer, she did not return to work after the day of the robbery.

Kendall, the first teller who the second robber threatened at gunpoint, identified Monghan from a photo lineup as the second robber. She also identified Monghan as the man considered to have cased the bank the previous day. Kendall made the same identifications at trial.

Vance, the other teller, could not identify Monghan as the second robber, either from a lineup or in court. And Fraley, the manager, similarly could not identify Monghan as the second robber, and had earlier identified from a lineup—with some uncertainty—another individual as the second robber.

On December 14, 2005, Sutton and Monghan were both charged with bank robbery, using a firearm in connection with a crime of violence, and being felons in possession of a firearm. *See* 18 U.S.C. §§ 2113(a) and (d), 924(c)(1), 922(g)(1).

Before trial, Monghan signed a stipulation of facts. Monghan stipulated that, on the date of the robbery: (1) the deposits of Huntington Bank were insured by the FDIC; (2) he had been convicted of a crime punishable by more than a year in prison; (3) the revolver referenced in the indictment was manufactured outside the state of Kentucky; and (4) the revolver referenced in the indictment was an operable firearm.

The district judge gave the jury a redacted indictment for its use during deliberations. The redaction removed all references to Sutton and the gun Sutton was alleged to have used during the robbery,[1] leaving only Monghan and the derringer revolver.

On November 5, 2008, the jury convicted Monghan of all three counts.

One year prior, Monghan had been convicted of two other bank robberies. The two other robberies took place on September 1, 2005, and October 4, 2005, both in Cincinnati and after the Huntington Bank robbery. For those separate convictions, Monghan was sentenced to 482 months in prison.

The federal parole officer prepared a Presentence Investigation Report ("PSR"). According to the PSR, Monghan was in criminal history category IV and had a total offense level of 28. For Monghan's conviction on count two, the § 924(c) violation, the statute mandated a consecutive sentence of 25 years in custody. For his convictions on counts one and three, the parole officer calculated a Guidelines range of 110–137 months and recommended a sentence of 110 months, with 50 months to be served concurrently with Monghan's 482-month sentence for his other bank robbery convictions.

On February 20, 2009, the district court held a sentencing hearing and sentenced Monghan to the mandatory 300-month prison term for his § 924(c) conviction, as well as to concurrent terms of 137 months for the robbery conviction and 120 months for the felon-in-possession conviction. Of the 137-month sentence for the robbery and felon-in-possession convictions, the court ordered

---

[1]That gun is the described in the indictment as a "black semiautomatic pistol."

that 84 months be served concurrently with the 482-month sentence for the prior robbery convictions, thereby leaving 53 months to be served consecutively.

In this timely appeal, Monghan challenges both his convictions and his sentence. Monghan first argues that his stipulation of fact was an effective guilty plea, and by not conducting a colloquy with him, the district judge violated his right to a trial by jury. Appellant's Br. at 9, 13–20. Monghan further argues that his attorney denied him his right to effective assistance of counsel by entering into the stipulation. *Id*. at 10, 20–22. Monghan also raises two procedural challenges to his sentence. First, he argues that the district judge erred by applying the two-level "threat of death" enhancement. *Id*. at 10, 23–24. Second, he argues that the judge erred in applying a one-level multiple-count enhancement because his robbery and felon-in-possession charges should have been grouped. *Id*. at 10–11, 25–27. Finally, Monghan argues that his sentence is substantively unreasonable. *Id*. at 11, 27–28. This court has jurisdiction to hear Monghan's claims under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

II

A

Monghan did not object to the court's failure to question him about the stipulation. Accordingly, plain-error review applies. *See United States v. Denkins*, 367 F.3d 537, 545 (6th Cir. 2004) ("Because Defendant failed to object to this plea colloquy, we review [Defendant's claim that the district court did not adequately ensure that he understood the charges against him] only for plain error.") (citing *United States v. Vonn*, 535 U.S. 55, 59 (2002) (holding that plain-error review applies where a defendant fails to object to a Rule 11 error)); *United States v. Keesee*, 275 F. App'x 488, 492

(6th Cir. 2008) ("Keesee made no reference to Rule 11 during the proceedings . . . . We engage in plain-error review when the defendant did not raise an objection before the district court.") (citing *United States v. Murdock*, 398 F.3d 491, 491 (6th Cir. 2005)).

If a defendant pleads guilty to a charge, the district judge must take steps to ensure that the plea is knowing, voluntary, and has a factual basis. FED. R. CR. PROC. 11(b). Although Rule 11 does not explicitly apply to stipulations of fact, this circuit has held that, in some situations, a district court should conduct a colloquy to ensure that a stipulation of fact is knowing and voluntary. In *Julian v. United States*, the defendant stipulated to felonious intent, which the court held to be "the controlling issue in the case." 236 F.2d 155, 158 (6th Cir. 1956). The *Julian* court further held that, because the "the stipulations amounted to a plea of guilty, [the trial judge] should have inquired whether defendant understood the charge and voluntarily acquiesced in the stipulations," and that "[s]uch action would have complied with Rule 11." *Ibid*. Similarly, in *Witherspoon v. United States*, the defendant stipulated to all of the elements of being a felon-in-possession and elected to challenge the criminal statute on Second Amendment grounds. 633 F.2d 1247, 1248 (6th Cir. 1980). Although the circuit court did not hold that the district court's failure to conduct a colloquy amounted to reversible error, it did "suggest to the District Courts that they consider the possible applicability of the terms of Rule 11 in any instance where a stipulation as to most or all of the factual elements necessary to proof of guilt of a crime is tendered. If applicable, the strictures of the rule should be followed." *Id*. at 1252. *Julian* and *Witherspoon* together stand for the proposition that, where a defendant stipulates to all of the elements of an offense or otherwise so reduces the

government's burden that the stipulation amounts to a de facto guilty plea, the district court should conduct a colloquy in compliance with Rule 11.

B

Monghan argues that two of the four factual stipulations, when considered in light of the indictment, amount to a de facto guilty plea and, therefore, required that the district judge conduct a colloquy. Those two stipulations are:

> 3.     That the RG Industries .22 caliber derringer revolver referenced in Count 2 and 3 [sic] of the Indictment was manufactured outside the Commonwealth of Kentucky.

> 4.     That the RG industries .22 caliber derringer revolver referenced in Count 2 and 3 [sic] of the Indictment was an operable firearm as defined by law.

Count 2 of the indictment alleges that Monghan brandished an RG Industries .22 caliber derringer revolver during the commission of a crime of violence, which was the robbery set out in Count 1. And Count 3 of the indictment alleges that Monghan was a convicted felon and knowingly possessed the same RG Industries revolver.

Monghan argues that, when read together with the indictment, the stipulation was the equivalent of an admission that Monghan used the derringer revolver during the robbery. Appellant's Br. at 18. Although Monghan correctly notes that whether he was one of the robbers was the primary issue in the case, we do not agree that his stipulation of fact can be reasonably construed as an admission that he was, in fact, one of the robbers. Monghan stipulated only to the place of origin and operability of the firearm, not whether he ever possessed, committed a robbery with, or otherwise used the firearm in any way. The stipulation left the government to prove both

that the derringer revolver recovered from Sutton's waistband was, in fact, the gun used in the robbery and, even more critically, that Monghan was the robber. And while the indictment alleged that Monghan used the derringer revolver in the robbery, the court instructed the jury that: "[t]he indictment is not any evidence at all of guilt. It is just the formal way that the government tells the defendant what crime he is accused of committing. It does not even raise any suspicion of guilt." Whether read with the indictment or alone, the stipulation simply shed no light on the issue of whether Monghan used the firearm in the robbery, an allegation that Monghan fiercely contested at trial. Indeed, defense counsel's closing argument focused entirely on the existence of reasonable doubt as to whether Monghan was one of the robbers.

The Fourth Circuit considered a similar claim in *United States v. Muse*. 83 F.3d 672 (4th Cir. 1996). In *Muse*, the defendant, who was charged with being a felon in possession of a firearm, stipulated that the firearm in question affected interstate commerce and that he had previously been convicted of a felony. *Id*. at 678. The defendant was convicted and argued that the district court failed to determine whether he knowingly and voluntarily entered into the stipulation. *Id*. at 681. The court rejected the argument, holding that "although Muse stipulated to two of the three elements, he vigorously contested the existence of the third, and most critical, element at trial," and his stipulations therefore did not amount to a guilty plea. *Ibid*. Accordingly, the court held that Rule 11 did not apply. *Ibid*.

Similarly, although Monghan stipulated to the federal elements of the crime, he contested the critical criminal elements. In no way did Monghan's stipulation amount to a plea of guilty, and a colloquy was therefore not required. As a result, Monghan points to no error, let alone plain error.

- 8 -

III

A

Ineffective assistance of counsel claims present mixed questions of law and fact and are reviewed de novo. *E.g., United States v. Carter*, 355, F.3d 920, 924 (6th Cir. 2004). However, this court is reluctant to review ineffective assistance claims on direct appeal, instead preferring to allow the parties to develop a record in a § 2255 proceeding. *Ibid*. An exception exists where the record below is adequate to address the merits of the claim. *Ibid*.

Constitutionally ineffective assistance has two components: deficient performance and prejudice to the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish deficient performance, the defendant must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Ibid*. "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id*. at 689. And to establish prejudice, the defendant must show that the "errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id*. at 687. Absent a conflict of interest where prejudice is presumed, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 693–94.

This court has recognized that factual stipulations to elements of a crime are often the product of a sound trial strategy. For example, where a prior felony conviction is an element of the offense, a sound strategy may be to stipulate to the existence of the conviction rather than allow the jury to hear details about the earlier crime. *Stamps v. Rees*, 834 F.2d 1269, 1276 (6th Cir. 1987); *see Old Chief v. United States*, 519 U.S. 172, 185 (1997) ("[T]here can be no question that evidence of the name or nature of the prior offense generally carries a risk of unfair prejudice to the defendant.").

B

Because Monghan's claim is premised entirely on his counsel's agreement to the stipulation, the text of which is in the record, the record is adequate to consider the merits of the ineffective assistance claim. However, we hold that the claim has no merit because Monghan can not overcome the presumption that the stipulation was part of a sound trial strategy.

Monghan notes that his counsel recognized the importance of challenging the existence of any link connecting Monghan to the firearm. Appellant's Br. at 21. Therefore, Monghan argues, the stipulation could not have been a product of a sound trial strategy. However, Monghan's counsel did not stipulate to Monghan's connection to the firearm. To the contrary, he contested this issue with vigor.

Monghan also argues that the government had a strong interest in not having to prove the place of manufacture and operability of the firearm, and that as a result, his counsel had significant bargaining leverage and should have received concessions in return for the stipulations or not entered into them at all. Appellant's Br. at 27–28. We disagree. The government seized the weapon in a traffic stop and did not, as Monghan argues, need to establish these elements by cobbling together

eyewitness testimony. The government identified the gun's make and, from there, could have effortlessly identifed its place of manufacture, which as stipulated, was outside the state of Kentucky.[2] Further, because the government had possession of the gun, determining that it was, in fact, a gun was simply not a tall order. Monghan had nothing to gain by challenging these obvious issues, and would have perhaps had much to lose by adding unnecessary complexity and time to the trial. Conversely, what the government could not so easily prove—that the derringer seized in the traffic stop was the gun used in the robbery—was not part of the stipulation, and the government had to present evidence at trial to prove that connection.

IV

A

This court reviews a district court's sentence for an abuse of discretion. *United States v. Barahona-Montenegreo*, 565 F.3d 980, 983 (6th Cir. 2009). However, plain-error review applies to claims that were not raised at the sentencing hearing. *United States v. Vonner*, 516 F.3d 382, 385-86 (6th Cir. 2008) (en banc).

The court must first consider whether the sentence is procedurally reasonable. *Barahona-Montenegreo*, 565 F.3d at 983. Procedural review involves a three-factor analysis: (1) whether the court properly calculated the Guidelines range; (2) whether the court considered the § 3553(a) factors and the parties' arguments; and (3) whether the court adequately explained why it

---

[2]RG Industries revolvers were manufactured in Germany. *Cheap Gun, Will Travel: Germany's RG Industries, Inc.*, TIME, Apr. 13, 1981, available at: http://www.time.com/time/printout/0,8816,954696,00.html.

imposed the chosen sentence. *United States v. Bolds*, 511 F.3d 568, 581 (6th Cir. 2007). Although the district court must consider the § 3553(a) factors, it need not explicitly reference each factor. *United States v. Hernandez-Fierros*, 453 F.3d 309, 312 (6th Cir. 2006). Rather, the court must "make an individualized assessment based on the facts presented and . . . discuss all relevant statutory factors to facilitate reasonable appellate review." *United States v. Simmons*, 587 F.3d 348, 358 (6th Cir. 2009) (internal quotations omitted).

Next, the court reviews the sentence for substantive reasonableness. *Barahona-Montenegro*, 565 F.3d at 983. Substantive review requires that the court "take into account the totality of the circumstances, including the extent of any variance from the Guidelines range." *Gall v. United States*, 552 U.S. 38, 51 (2007). Due deference must be given to the sentencing judge's decision, and the fact that this court "might reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal." *Ibid*.

B

Monghan argues that the district court improperly calculated the Guidelines range. Because Monghan made no objection to the calculation at the sentencing hearing, his claims are reviewed for plain error. Accordingly, Monghan must show "(1) error (2) that was obvious or clear, (3) that affected [his] substantial rights and (4) that affected the fairness, integrity, or public reputation of the judicial proceedings." *Vonner*, 516 F.3d at 386 (internal quotation marks and citation omitted).

The district court clearly miscalculated Monghan's sentence under the Guidelines. The district court applied a two-level threat-of-death enhancement pursuant to USSG §2B3.1(b)(2)(F), but that enhancement was improperly applied because the threat was firearm-related and Monghan

was also convicted under 18 U.S.C. § 924(c). *United States v. Hazelwood*, 398 F.3d 792, 799–800 (6th Cir. 2005) (holding that the threat-of-death enhancement may not be applied where defendants made verbal threats while brandishing guns and were also convicted under § 924(c)); USSG §2K2.4, comment. (n. 4). The district court also erred by not grouping Monghan's felon-in-possession and robbery convictions. USSG §§ 3D1.2(c), 3D1.2, comment. ( n. 5) ("[U]se of a firearm in a bank robbery and unlawful possession of that firearm are sufficiently related to warrant grouping of counts under this subsection."). Because the district court should have grouped these two offenses, it erred by applying a multiple-count enhancement of one level. The government concedes that the district court erred by applying the two enhancements. Appellee's Br. at 9.

Although the district court made clear errors in calculating the Guidelines range, remand is warranted under plain-error review only if the errors affected Monghan's substantial rights and the fairness of the sentencing proceeding. In this case, the district judge calculated the Guidelines range to be from 110 to 137 months in prison, which was based on a criminal history category of IV and an offense level of 28. The judge sentenced Monghan to a 137-month sentence, at the high end of the range. Because the correct offense level is 25, the proper Guidelines range is from 84 to 105 months in prison. Accordingly, Monghan has established plain error. *United States v. Baker*, 559 F.3d 443, 454 (6th Cir. 2009) (holding that a miscalculation resulting in an increased Guidelines range constitutes plain error). Accordingly, we remand for resentencing and do not reach the question of whether Monghan's sentence was substantively unreasonable. *United States v. Novales*, 589 F.3d 310, 314–15 (6th Cir. 2009) ("Because this [procedural] error requires a remand for

resentencing, we need not determine whether Novales's sentence was substantively unreasonable.")

(citing *Gall*, 552 U.S. at 51).

V

For the foregoing reasons, we AFFIRM Monghan's convictions but REMAND to the district court for resentencing without the threat-of-death and multiple-count enhancements.